IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA, LOCAL 38,

    Plaintiff,

  v.

WACKENHUT CORPORATION,

    Defendant.

No. CV 04-1858-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Before the court are three motions: defendant's motion for summary judgment (#63); plaintiff's motion for sanctions (#67); and plaintiff's motion for summary judgment (#78). For the reason's set fourth below, defendant's motion for summary judgment is DENIED, plaintiff's motion for sanctions is DENIED, and plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

    Defendant provides security guards for the federal government at federal buildings in Oregon and southwest Washington under a contract with the General Services Administration ("GSA"). The Federal Protective Service ("FPS") has the authority to certify any person employed as a security guard at a federal building or facility and retains the right to grant or

PAGE 1 - OPINION AND ORDER

withdraw a person's access to such facilities. Plaintiff is the collective bargaining representative for defendant's security guards under the GSA contract.

In September 2003, defendant discharged three security guards, Dallas Poage, Jeffrey Febus, and Mitchell Wetzel, and suspended two others, Ron Miley and Peter Reyes, at the request of FPS for reviewing inappropriate material while on duty and for abandoning post without relief. Plaintiff filed a formal grievance on behalf of the security guards ("the grievants"). The grievance proceeded to arbitration before Carlton Snow. Mr. Snow found defendant did not have just cause to discharge and suspend the grievants. As a remedy, he ordered the grievants reinstated and to be made whole for all harm suffered as result of defendant's violation of the parties' collective bargaining agreement ("CBA"), minus interim earnings. He retained jurisdiction over the matter for 60 days to resolve any issues arising from the remedy award. As could be expected, an issue arose. Unfortunately, Mr. Snow died just weeks after issuing his decision and did not have the opportunity to address the parties' dispute over the remedy award.

Consequently, the parties initiated litigation before this court. On August 29, 2005, the court denied defendant's motion for summary judgment to vacate the arbitrator's award, denied plaintiff's motion for summary judgment to confirm the award in part, and granted plaintiff's motion to remand the matter for further arbitration before a new arbitrator. Plaintiff filed a motion to reconsider requesting that the court affirm Mr. Snow's award in full, therefore, granting its motion for summary judgment in full. The court granted that motion. However, further arbitration was ordered for any remedy issues, including defendant's impossibility defense to reinstatement. The court explained this defense required a showing that (1) defendant made a good faith request that FPS consent to reinstatement, and (2) FPS denied that request.

Shortly thereafter, the parties requested a status conference to discuss the scope of the arbitrator's authority on remand. The court stated:

> The first thing your arbitrator will do is determine whether it really

> is not possible for [defendant] to comply with the – with any reinstatement order. That's not legal impossibility. I want to be clear about that. That's just whether in fact FPS has made it clear that reinstatement isn't going to be allowed as a factual matter.

Ex. J-5, Gibson Mot. for Sanctions Aff. The court further explained:

> What's not on the table is the legal impossibility defense. That's been decided already. So when plaintiff essentially states in their letter to me that the parties arbitrate not only defendant's impossibility defense to specific performance of the merits awards reinstatement and/or back pay, but any other remedy issues the parties can't resolve prior to arbitration, that's correct, and that's not only correct, it's what I ordered and it's what the parties agreed to initially with Arbitrator Snow, and it's what the parties agreed to at the conclusion of the hearing, when I recited all of that and asked whether there was any disagreement at all with that.
>
> That's what should be arbitrated. That also allows us to have an appeal from the whole ball of wax at once, or at least everything that's now left, rather than come up on some further decision about factual impossibility and then go back again, who knows how much later from now, on replacement remedies or alternative remedies, if you will.

*Id.*

Further arbitration of these issues then proceeded before Robert W. Landau. He determined defendant had failed to establish an impossibility defense but that it was factually impossible for defendant to reinstate the grievants to their former positions. Ex. A., Def.'s Mot. for Summ. J. He awarded backpay, including interest, as a make-whole remedy, denying front pay and other alternative remedies. *Id.* Subsequently, defendant filed its motion for summary judgment seeking to vacate Mr. Landau's award. In response, plaintiff filed a motion for sanctions, arguing defendant's motion is frivolous and legally unreasonable, as well as a motion for summary judgment, seeking to enforce the arbitration award. I now address these motions.

## DISCUSSION

I.   Motions for Summary Judgment

Judicial review of an arbitration award is both limited and highly deferential. *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Az. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir.

1988). The court must enforce an award so long as it "draws its essence" from the CBA and represents "a plausible interpretation" of the CBA. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Az. Mech.*, 863 F.2d at 653. "A reviewing court is bound-under all except the most limited circumstances-to defer to the decision of [the arbitrator], even if ... that ... decision finds the facts and states the law erroneously." *SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 924-25 (9th Cir. 1996). Thus, "if, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Az. Mech.*, 863 F.2d at 653. The arbitrator's interpretation of the scope of issues submitted to him is entitled to the same deference. *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989).

The Ninth Circuit has identified four grounds supporting vacatur of an arbitration decision resolving a labor dispute: (1) the award does not draw its "essence" from the CBA and thus the arbitrator effectively dispensed "his own brand of industrial justice;" (2) the arbitrator exceeded the boundaries of the issues submitted for decision; (3) the award is contrary to public policy; or (4) the award was procured by fraud. *S. Calif. Gas Co. v. Util. Workers Union of Am.*, 265 F.3d 787, 792-93 (9th Cir. 2001). Here, defendant argues only three grounds for vacatur–Mr. Landau's award (1) contravenes public policy; (2) fails to draw its essence from the CBA; and (3) exceeds the scope of his arbitral authority. However, defendant asserts the same two arguments for each ground for vacatur: (1) Mr. Landau simply got it wrong when he rejected its impossibility defense; and (2) his award for back pay was punitive rather than compensatory.

      A.      Impossibility Defense

Defendant contends Mr. Landau erroneously determined that it did not make a good faith effort that FPS reinstate the grievants for two reasons. First, it contends Mr. Landau discounted or ignored evidence that it made a prompt, good faith request that FPS reinstate the grievants. Even if that were true, it would not support vacatur of the award. As explained above, judicial review of an arbitration award is highly deferential, and the award must be upheld even if the

arbitrator erroneously determined the facts and stated the law. *SFIC Props.*, 103 F.3d at 924-25. However, Mr. Landau did discuss much of the evidence and case law of which defendant complains. For example, Mr. Landau reviewed correspondence between defendant, GSA, and FPS that occurred just after the Snow award. The correspondence between these three parties certainly provides at least some support for the arbitrator's finding that defendant did not ask for the grievants' reinstatement. Instead, defendant indicated it would appeal the Snow award and solicited GSA's and FPS's support for the appeal. Ex. A at 9, Def.'s Mot. for Summ. J. Mr. Landau also considered defendant's verbal requests made before the Snow award was issued as well as requests occurring between this court's remand and the arbitration proceedings before him. *Id.* All of these findings are clearly supportable under the deferential standard of review in these cases.

Second, defendant asserts Mr. Landau's rejection of its impossibility defense was penal in nature in that he penalized it by rejecting that defense because it sought judicial review of the Snow award. In support of this argument, defendant relies on Mr. Landau's statement that "[i]nstead of making a good faith effort to comply with the Snow award, [defendant] immediately indicated that it would seek to vacate the award and vigorously (but unsuccessfully) pursued this objective in federal court." Ex. A at 11, Def.'s Mot. for Summ. J. Again, this statement alone is not grounds for vacatur. *See SFIC Properties, Inc*, 103 F.3d at 924-25. Moreover, Mr. Landau did not penalize defendant for seeking vacatur of the Snow award. He simply explained that defendant's impossibility defense was foreclosed because it chose judicial action instead of making a good faith request that FPS reinstate the grievants, nothing more, nothing less. Essentially, defendant's argument boils down to a disagreement with Mr. Landau's impossibility determination, which is itself not grounds for vacatur.

      B.      Back Pay Award

Defendant argues Mr. Landau's back pay award is punitive because it exceeds the monetary loss the grievants suffered as a result of the breach of the CBA. In support of this

argument, defendant relies on a series of cases, including the Ninth Circuit's decision in *Desert Palace v. Local Joint Executive Board of Las Vegas*, 679 F.2d 789 (9th Cir. 1982). Defendant's reliance is misplaced. The holding of *Desert Palace* reaffirms that arbitration awards are generally limited to compensatory damages. 679 F.2d at 794. The Ninth Circuit merely held the district court misunderstood the nature of the breach of the CBA at issue, and that properly calculated, the award was only compensatory. *Id.*

Similar to the award in *Desert Palace*, Mr. Landau's back pay award puts the grievants in the same position as if defendant had not breached the CBA. It merely gives them the pay they did not earn during the period of the breach. As such, Mr. Landau's back pay award is compensatory and not punitive. I reject defendant's argument that the back pay award unjustly enriches the grievants because it provides them with compensation for a time when they could not have worked due to FPS's revocation of site access. This issue was addressed by the Second Circuit in *Wackenhut Corporation v. Amalgamated Local 515*, 126 F.3d 29 (2nd Cir. 1997), a factually similar case involving this same defendant.

In that case, Wackenhut fired a security guard at a nuclear facility after that guard's site access had been revoked by the operator of the facility. 126 F.3d at 31. After the termination was grieved and proceeded to arbitration, the arbitrator found Wackenhut had violated the CBA by firing the security guard without just cause and awarded him back pay. *Id.* The district court vacated the back pay award for two reasons: (1) it bestowed a windfall on him because he would not have been entitled to pay or benefits even if Wackenhut had not relieved him from duty; and (2) a provision of the CBA prohibited back pay where the employee had been denied site access. *Id.* at 33. The Second Circuit reversed and reinstated the back pay award. *Id.* at 34. With regards to the windfall argument, the court found that although the back pay award may bestow a windfall, such reasoning is not "adequate to upset the award under the highly deferential standard of review applied to labor arbitrations." *Id.* at 33. Moreover, the court was not clear that the award bestowed any sort of windfall. *Id.* It explained that "the back pay appears to have been

granted in compensation for the employer's failure to make good-faith efforts to have [the security guard's] site clearance reinstated." *Id.* The court concluded, "So interpreted, the back-pay remedy did not bestow a windfall on [the security guard], but put him in the position he might have been had Wackenhut taken appropriate action on his behalf in the first place." *Id.* The court then rejected the district court's interpretation that a specific provision of the CBA prohibited back pay.

As was the case in *Amalgamated Local*, Mr. Landau's back pay award is intended to put the grievants in the same position they might have been had defendant sought their reinstatement in good faith. Ex. A at 14-15, Def.'s Mot. for Summ. J. As such, it does not bestow a windfall upon the grievants. Moreover, even if it did, that would not be grounds for vacatur based on the highly deferential standard of review. *Amalgamated Local 515*, 126 F.3d at 33.

Accordingly, defendant's motion for summary judgment is denied. Its stated reasons for vacatur do not show the Landau award violates public policy, fails to draw its essence from the CBA, or exceeds the arbitrator's authority on remand.

II.     Rule 11 Sanctions

Plaintiff's motion for sanctions under Fed. R. Civ. P. 11 has two parts. First, plaintiff contends defendant's affirmative defenses and amended counterclaim to its second claim for relief violate Rule 11(b)(1) and (2) and warrant monetary sanctions. Second, plaintiff requests the court sanction defendant and/or its attorneys by ordering them to pay its fees and costs associated in opposing defendant's motion for summary judgment and in filing the present motion for sanctions.

Courts employ an objective standard of reasonableness when determining whether a litigant has met its Rule 11 duties. *See G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). The purpose of Rule 11 is to deter baseless filings, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), which requires courts to deter abusive use of the judicial process without chilling zealous advocacy. *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d

1156, 1159-60 (9th Cir. 1987). Sanctions are appropriate when the filing "is frivolous, legally unreasonable or without factual foundation, even though . . . not filed in subjective bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).

Here, defendant's motion for summary judgment is not frivolous, legally unreasonable, or without factual support. As noted above, although not victorious, defendant set forth compelling reasons for vacatur of Mr. Landau's award, i.e. Mr. Landau's award violates public policy, fails to draw its essence from the CBA, and exceeds the scope of his arbitral authority. After careful review, the court finds defendant's grounds for vacatur were made in good faith and not for an improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation. Ironically, the motion that is borderline frivolous is plaintiff's motion for sanctions. Plaintiff's motion for sanctions is therefore denied.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (#63) is DENIED, plaintiff's motion for summary judgment (#78) is GRANTED, and plaintiff's motion for sanctions (#67) is DENIED.

IT IS SO ORDERED.

DATED this  6th  day of September, 2007.

> /s/ Michael W. Mosman
> MICHAEL W. MOSMAN
> United States District Court